# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| M.C., by next friend SHARON CRIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 1:05-cv-0162-SEB-TAB |
| KELLIE WHITCOMB, Superintendent, | ) | |
| LOGANSPORT JUVENILE | ) | |
| INTAKE/DIAGNOSTIC FACILITY in | ) | |
| her official and individual capacities, | ) | |
| RON ANDERSON, Superintendent, | ) | |
| EVEYLYN RIDLEY-TURNER, | ) | |
| Commissioner, Indiana Department of | ) | |
| Correction, | ) | |
| | ) | |
| Defendants. | ) | |

## Entry Discussing Pending Motions

This cause is before the court on the defendants' motion for summary judgment, on the plaintiff's motion to strike, and on the appropriate responses to such motions. As used herein "M.C." refers to the plaintiff, a minor who brings this lawsuit through his mother Sharon Crider as his next friend, "DOC" refers to the Indiana Department of Correction, "Logansport" refers to the Logansport Juvenile Intake/Diagnostic Facility, and "Pendleton" refers to the Pendleton Juvenile Correctional Facility.

For the reasons explained in this Entry, the motion to strike must be denied, while the motion for summary judgment must be granted.

## I. Background

M.C. was committed to the custody of the DOC after having been found to have committed various acts of delinquency. M.C. was confined in Logansport from May 28, 2003, until June 10, 2003, and again for nearly two (2) weeks in March 2004. M.C. has been confined in Pendleton continuously since March 16, 2004. M.C.'s claims in this action

are that the Superintendents of both Logansport (Superintendent Whitcomb) and Pendleton (Superintendent Anderson) failed to protect him from assault (at Logansport) and caused him to be placed in an unsafe housing location despite knowing that he needed more protection (at both Logansport and Pendleton). The assault occurred at Logansport on June 3, 2003.

When M.C. arrived at Logansport, he attended a standard orientation for students. In the course of that orientation, which was presented by Captain Smith, M.C. received information concerning various aspects of the operation of the facility. One feature of this operation was the existence of a grievance process. M.C. acknowledged on a prepared form that the grievance process had been explained to him and that he understood it. At the time pertinent to M.C.'s claims in this case, this was a multi-step process whereby a written grievance could be submitted to a staff member, a response would be made, and an appeal from that and subsequent responses could be undertaken through the entire 5-step procedure. A similar grievance program was in effect at Pendleton, and at each institution written records are kept of grievances and appeals filed and responses made.

No written grievance regarding the subject matter of the claims in this lawsuit was submitted by M.C. at either Logansport or Pendleton.

## II. Motion to Strike

The plaintiff's motion to strike is **denied.** The reason for this ruling is that the declarations of Smith and Burnett satisfy the evidentiary requirements of Rule 56(e) of the *Federal Rules of Civil Procedure*, the statements therein do not attempt to disguise law as facts, and, in any event, the defendants have cured the asserted deficiency through their production of the written **grievance procedures in effect in 2003 and 2004.**

## III. Motion for Summary Judgment

The undisputed facts are recited, in part, in Part I of this Entry. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). If the moving party carries this burden, the opposing party then must "go beyond the pleadings" and present specific facts which show that a genuine issue exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The argument presented by the defendants in support of their motion for summary judgment is that M.C. failed to comply with the exhaustion of administrative remedies requirement of the Prison Litigation Reform Act ("PLRA").

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions under § 1983. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[F]ailure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). Congress enacted this mandatory exhaustion requirement as part of the Prison Litigation Reform Act's effort to curtail frivolous and abusive prisoner litigation. *Rivera v. Allin,* 144 F.3d 719, 727-28 (11th Cir. 1998). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 126 S. Ct. 2378, 2385 (2006) (footnote omitted); see also *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'")(quoting *Pozo,* 286 F.3d at 1025).

The area of dispute here is not whether grievance processes existed at Logansport and at Pendleton or whether M.C. utilized those processes–the processes existed and M.C. did not utilize them. Instead, the inquiry, similar to *Dale* and *Kaba*, is whether those processes were "available" to M.C. This is key, of course, because the exhaustion requirement of the PLRA must be satisfied only to the extent that such remedies are "available." 42 U.S.C. § 1997e(a).

> Because the PLRA does not say when a process is "available," the court must apply the ordinary meaning of the term. *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187, 115 S. Ct. 788, 130 L.Ed.2d 682 (1995). In *Ngo,* the Supreme Court rejected the idea that, for example, a process becomes unavailable because the prisoner does not comply with the procedural rules and therefore cannot obtain relief, and required courts to look at the reason why the administrative process is unavailable. 126 S. Ct. at 2387, 2392-93. Thus, when the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited. On the other hand, when prison officials prevent inmates from using the [prison's] administrative process . . . , the process that exists on paper becomes unavailable in reality. Thus, as we held in *Dale,* when prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not "available." 376 F.3d at 656. . . . Most recently, we observed, "[p]rison officials may not take unfair advantage of the exhaustion requirement, [ ] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d at 809.

*Kaba v. Stepp,* 458 F.3d 678, 681 (7th Cir. 2006)(some internal citations omitted).

M.C. makes no argument at all concerning the failure to exhaust administrative remedies while he has been at Pendleton. The motion for summary judgment must therefore be granted insofar as his claims relate to the conditions of his confinement at Pendleton.

M.C. presents a few arguments as to the situation at Logansport (and none at all as to the situation at Pendleton). Unlike the questions which were unresolved by the record in *Kaba*, however, the record here is sufficient to address these matters at the summary judgment stage.

- Although M.C. was without writing materials immediately after the assault on him at Logansport, he did not request those materials. There was no denial by Logansport staff of paper and writing materials or of the forms needed to initiate a grievance.

- M.C. was released from segregation at Logansport after two days. If he had submitted a grievance after his release from segregation at Logansport, it would have been considered, even though submitted after the period prescribed for the filing of a grievance.

- M.C.'s concerns with his safety at both Logansport and Pendleton and the fact that he was assaulted at Logansport were all within the scope of conditions of his confinement which could be grieved.

M.C.'s efforts to avert the exhaustion requirement, to meet that requirement (as to the Logansport claims) through a showing of substantial compliance, or to create a question of fact as to whether he was prevented from following the grievance process are each unpersuasive here.

- The Seventh Circuit has taken a "strict compliance approach" to what qualifies as exhaustion. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has held that "exhaustion in § 1997e(a) cases is now mandatory." *Porter v. Nussle,* 534 U.S. 516, 524 (2002). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. As the Court stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [PLRA's] statutory exhaustion requirements." *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001). The filing of administrative remedies is mandatory because the PLRA "eliminated the [district courts'] discretion to dispense with [it]." *Id.,* at 739.

- Nonetheless, "[p]rison officials may not take unfair advantage of the exhaustion requirement, [ ] and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole,* 438 F.3d at 809. There was no such affirmative misconduct preventing M.C. from exhausting at either Logansport or Pendleton.

●      Additionally, when Congress enacted the exhaustion requirement it did not create an exception for minors such as M.C. It defined a prisoner as any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Inclusion of the term "delinquent" in this definition actually reinforces the intent that juveniles be subject to the exhaustion requirement. *See Minix v. Pazera,* 2005 WL 1799538, *2 (N.D.Ind. July 27, 2005); *Lewis v. Gagne,* 281 F. Supp. 2d 429, 433 (N.D.N.Y. 2003) (citing cases); *One Brick Too Many: the Prison Litigation Reform Act as a Barrier to Legitimate Juvenile Lawsuits,* 23 T.M. Cooley L. Rev. 263, 267 (2006)("The PLRA expressly includes juvenile delinquents in its scope-both those in detention centers and those in adult prisons or jails.")(footnotes omitted).

●      M.C. suggests that he was unaware of the exhaustion requirement or the exhaustion procedure at Logansport. These points are refuted by his signed acknowledgment (signed before the assault on June 3, 2003) that he was aware of both. Even if this was not the case or if M.C. could now raise a question of fact as to what knowledge he had, courts have held that a prisoner being unaware of the exhaustion requirement or of a grievance procedure does not excuse a failure to exhaust. *See Yousef v. Reno,* 254 F.3d 1214, 1221 (10th Cir. 2001) (rejecting the prisoner's argument that the Assistant Attorney General was under any duty to advise the prisoner of the need to follow internal Bureau of Prisons administrative procedures, and noting that the prisoner provided no authority for that assertion). Section 1997e(a) says nothing about a prisoner's subjective knowledge of the existence or workings of a grievance process.

●      As to the expiration of the time prescribed for filing a grievance at Logansport, it is true that a grievance "rejected solely on the basis of untimeliness" does not satisfy the PLRA's exhaustion requirement.*Conyers v. Abitz,* 416 F.3d 580, 584 (7th Cir. 2005). However, that does not describe what occurred in M.C.'s situation at Logansport. Facility officials did not have the opportunity to accept or reject a grievance as untimely, because M.C. did not file a grievance. Even if he had concerns about a grievance being untimely by a few days (post-release from segregation), moreover, it has been held that a prisoner fails to exhaust his remedies if he does not take advantage of a procedure for reconsidering untimely filings. *Cannon v. Washington,* 418 F.3d 714, 718-19 (7th Cir. 2005) (per curiam).

●      M.C.'s last argument is that he has "constructively" exhausted administrative remedies. The court finds no evidence of this, though in any event the Seventh Circuit has rejected an argument that the doctrine of substantial compliance could be recognized as a means of satisfying the statutory exhaustion requirement, *Lewis v. Washington,* 300 F.3d 829, 834 (7th Cir. 2002)

The defendants have thus established that (1) at the time of M.C.'s confinement in Logansport and in Pendleton, there was an administrative grievance procedure whereby inmates could seek relief with respect to their treatment and the conditions of their confinement, (2) the grievance procedures were available to M.C. at each institution, (3) M.C.'s claims were subject to those grievance procedures, and (4) M.C. did not utilize

the grievances procedure relative to his claims before bringing this action. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that M.C.'s action should not have been brought and must now be dismissed without prejudice. *Pozo v. McCaughtry,* 286 F.3d 1022 (7th Cir. 2002) (explaining that "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating"); *Massey v. Helman,* 196 F.3d 727, 733-34 (7th Cir. 1999) ("[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. . . [C]ourts merely need to ask whether the institution has an internal administrative grievance procedure . . . . [I]f such an administrative process is in place, then § 1997e(a) requires inmates to exhaust those procedures before bringing a prison conditions claim.").

## IV. Conclusion

The plaintiff's motion to strike is **denied.** The defendants' motion for summary judgment is **granted** for the reasons explained in Part III of this Entry.

**IT IS SO ORDERED**.

Date: 03/02/2007 _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana